UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
(ORLANDO DIVISION)

| | |
|---|---|
| In re: ANDREW B. MIGELL, *Debtor*. | Case Number: 6:15−bk−10569−KSJ<br>Chapter 11 |

**ALICE E. MIGELL'S MOTION TO CONVERT TO CHAPTER 7**

Creditor Alice E. Migell moves that this Court convert this case to chapter 7 pursuant to 11 U.S.C. § 1112 (b) for reasons stated below and as more fully described in the Consolidated Memorandum in Support of Motion to Convert to Chapter 7 and Motion to Appoint Trustee (the "Memorandum"), filed herewith.

**Authority for conversion to chapter 7**.

1. 11 U.S.C. § 1112(b)(1) authorizes this Court to convert the Debtor's voluntary petition under chapter 11 to chapter 7 for cause under the following non-exclusive criteria set out in section 1112(b)(4) as applicable to this case:

> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>
> (B) gross mismanagement of the estate;
>
> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter [11 USCS §§ 1101 et seq.];
>
> (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
>
> (M) inability to effectuate substantial consummation of a confirmed plan.

2. This petition was brought in bad faith, the Debtor's schedules are fraudulent, and this case is an abuse of the bankruptcy system. This petition was not filed for the purposes of

reorganization of a business, so that conversion to chapter 7 is appropriate. *Yehud-Monosson USA, Inc. v. Fokkena*, 458 B.R. 750, 754 (B.A.P. 8th Cir. 2011). The purpose of this filing, rather, is continued, unreasonable delay to obstruct and prevent Mrs. Migell from recovering the assets she needs for her care and support, and purposefully increasing fees and expense to Mrs. Migell to recover her own property (including property owned beneficially through her husband's estate). This is cause for conversion from chapter 11 to chapter 7. *Pioneer Liquidating Corp. v. U.S. Trustee*, 264 F.3d 803, 808-809 (9th Cir. 2001).

3. The Debtor is wholly unable to meet his burden under section 1112(b) to demonstrate that conversion would not be in the best interests of the creditors. *In re: Scott Korn,* 523 Bankr. 453, 464 (Bankr. E.D. Pa. 2014). The purpose of chapter 11 is to provide protection for a debtor to reorganize and rehabilitate a sick business. In addition to the bad faith and fraudulent prosecution of both bankruptcy filings by the Debtor, where as here it is apparent that rehabilitation is not feasible, conversion of the case to chapter 7 for liquidation is required. *In re: K.C. Marsh Co., Inc.*, 14 B.R. 401, 404-405 (Bankr. D. Mass. 1981).

**Debtor's finances as revealed by his schedules and operating reports**

4. The Debtor's amended Schedule A/B discloses total assets of $3,635,256. Dkt. # 59, p. 32.[1] He did not file an amended Schedule D, but his initial Schedule D discloses secured debt against these assets of $1,358,517, Dkt. # 34, p. 19, and he claims a homestead exemption for property at 11 Timicuan Drive, Ormand Beach, Florida which has a net value according to the schedules of $167,000. Thus, the Debtor's Schedules as filed showed net assets available to satisfy creditors of $2,110,739.

---

[1] For purposes of this motion, Mrs. Migell accepts values placed by the Debtor.

5. Of the gross assets reported on Debtor's schedules totaling $3,635,256, however, $1,881,890 of it is comprised of assets that do not belong to the Debtor per the state court judgments, title records, and his own testimony as detailed in the Memorandum. See chart, Memorandum at pp. 6 - 7. If left to Debtor's own assets which are the only ones he honestly should have listed, and for purposes of this Motion giving him the benefit of the doubt for his claimed homestead exemption that has been objected to, Dkt. # 65, his net assets available to satisfy creditors is only $588,627 and this includes his homestead.

6. According to the Debtor's income and expense statements, his net monthly income was <$3,456.70> when the petition was filed. Sch. J, l. 23c, Dkt. # 34, p. 32. The Debtor's amended Schedule J filed March 2, 2016 shows net monthly income of <$4,056.70>. Dkt. # 59, p. 32.

7. The Debtor listed $1,128,761.88 in unsecured claims. Sch. E/F, Dkt. # 34, pp. 20-21. Although adjustments are appropriate to these items, in that some debts are overstated as of this filing (such as to Sally R. Gaglini, Esq.) others are also significantly understated, such as the Debtor's obligations to his mother. The Debtor discloses his indebtedness to Mrs. Migell as $562,759. Sch. J, l. 4.4, Dkt. # 34, p. 23. The proof of claim filed on her behalf shows this claim to be $1,520,022.30. Claim # 8.[2]

8. For simplicity, if the claim attributed to Attorney Gaglini is deleted and Mrs. Migell's proof of claim amount is used, the Debtor's unsecured claims are $1,957,025.18.

9. Thus, the Debtor has actual net assets of only $588,627 and unsecured liabilities of $1,957,025 if the homestead is excluded. He is operating at a net loss of $4,056.70 per month.

---

[2] Under the state court judgments, the Debtor remains liable for debts he placed against real estate for which the deeds he procured were nullified. Those balances do appear on his schedules and so are not intended to be duplicated in the Notice of Claim for Mrs. Migell.

10. The net loss means, as revealed in the monthly operating reports, that property taxes and other obligations to maintain asset value for the bankruptcy estate are not being paid. Thus, the bankruptcy estate is being diminished to the detriment of creditors, the most significant debt being owed to his own mother who suffers from dementia and who needs access to the assets she has been awarded through the state court judgments in order to pay expenses – not the least of which is for her nursing home.

**Conversion to chapter 7 for bad faith, fraud, and bankruptcy abuse**

11. As the Memorandum sets out in detail, this petition was filed in furtherance of the Debtor's well-documented scheme to defraud Mrs. Migell, and so to hinder and delay satisfaction of the Judgments as evidenced by the following:

a. The Debtor threated the undersigned Conservator for Mrs. Migell (and family), for which he faces criminal prosecution in Massachusetts. These threats were clearly also designed to stop efforts to enforce Mrs. Migell's rights to recover assets through the state court and Bankruptcy Court. Memorandum at 3 - 4.

b. Pre-petition acts by the Debtor were fraudulent as to Mrs. Migell, as established by findings and judgments entered in state court proceedings and through the clear attempt but the Debtor to transfer his interest in real estate located in Waltham, Massachusetts during the pendency of his first petition before this Court. Memorandum at pp. 4 - 5.

c. The Debtor's Schedules filed in this Court, for this petition, are fraudulent. Memorandum at pp. 5 – 7.

d. The Debtor's Schedules are incomplete. Memorandum at p. 7.

e. The Debtor is incompetent or guilty of gross mismanagement, to the detriment of his creditors, of whom his own mother is the principal creditor due to the Debtor's scheme to defraud her. Memorandum at pp. 7 - 8.

12. The Debtor filed two voluntary petitions just after the state court issued detailed orders for a receiver to liquidate assets, and this petition was filed to prevent the receiver from selling property pursuant to the Settlement Agreement the Debtor signed to resolve his first

petition the day of trial that would have established, among other things, his active bankruptcy fraud.

13. It is bad faith for the Debtor to file successive voluntary petitions under chapter 11, with no discernable ability to reorganize and no real change in the Debtor's circumstances. *In re: Roxy Real Estate Co., Inc.*, 170 B.R. 571, 574 (Bankr. E.D. Pa. 1993).

14. Rather, this petition is filed for the apparent purpose of obstructing proceedings in the state court for contempt and satisfaction of its judgment; of sabotaging the Settlement Agreement from his first bankruptcy; of chilling Mrs. Migell from pursuing her claims by driving up costs and wearing out her Conservator; and if any plan were to be proposed, to pay Mrs. Migell with property that belongs to her or to the estate of her predeceased husband as the state court judgments have decided . *In re: Silberkraus*, 253 B.R. 890, 902-911 (Bankr. C.D. Calif. 2000) (pattern of bad faith in filing similar to Debtor resulting in imposition of sanctions for attorney fees under Fed. R. Bankr. P. 9011)

15. Conversion to chapter 7 is appropriate due to the Debtor's fraudulent disclosures on his Schedules. See Memorandum at pp. 5 - 7. Certainly, the Debtor meets the test of fraud concerning his disclosures under 11 U.S.C. §114 such that the Court should revoke a reorganization plan by Debtor were one ever proposed or approved based on these schedules. *Tenn-Fla Partners v. First Union National Bank*, 226 F.3d 746, 747 – 751 (6th Cir. 2000), *aff'g.* 229 B.R. 720, 734-737 (W.D. Tenn. 1999).

**(A) Substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation**

16. The Debtor's initial schedules and monthly operating reports establish beyond doubt that the estate is suffering, and will continue to suffer, continuing losses and a diminution of the estate as obligations such as real estate taxes go unpaid. The Debtor's accrual of many

years of unpaid real estate taxes as shown in the Memorandum at pages 8 to 10 diminishes the estate to the detriment of his creditors.

17. For purposes of section 1112(b)(1), rehabilitation means that the Debtor can be "put back in good condition: re-establish a firm, sound basis". *In re: Brutsche*, 476 B.R. 298, 301-302 (Bankr. D.N.M. 2012) (citations omitted). This is clearly not an option for the Debtor.

**(B) Gross mismanagement of the estate**

18. The accrual of large debt, arrearages, tax takings and tax delinquencies, and expenses that bar far exceed the Debtor's resources, demonstrate that he has mismanaged the real property assets that he asserts comprise the estate such that creditors are jeopardized. There is no justifiable reason for the real estate Debtor claims to own to be saddled with $154,000 in unpaid real estate taxes and be encumbered by numerous tax takings and delinquencies, as catalogued in the Memorandum at pages 8 – 10.

**(F) Unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter**

**and**

**(J) Failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court**

19. Debtor's clear intent not to reorganize or satisfy his creditors is evident by his failure or refusal to file a reorganization plan either in his first bankruptcy case or this one. He also fails to timely file monthly reports, notably being delinquent with the filing of his March 2016 report as of the filing of this Motion.

**(M) Inability to effectuate substantial consummation of a confirmed plan**

20. The Debtor has no means by income or unencumbered assets to construct any reorganization plan. He operates his real estate management and investment business at a

monthly loss of $4,056.70. He has net reported assets of $588,627 and unsecured liabilities of $1,957,025.

21. The Debtor's own schedules show no prospect of being able to satisfy creditors short of liquidation. He has proposed no plan despite ample opportunity and acted in every way possible to sabotage the Settlement Agreement by which a substantial portion of his debt could have been satisfied. This resulted only in the increase in costs and purposeful delay in recovery for Mrs. Migell.

WHEREFORE, Creditor Alice E. Migell requests that this Court convert the case from chapter 11 to chapter 7.

Respectfully submitted,

Dated: May 16, 2016

/s/ Robert J. O'Regan
Robert J. O'Regan (BBO#379970)
*As Guardian and Conservator for*
*Alice E. Migell*
Burns & Levinson LLP
125 Summer Street
Boston, MA 02110
(617) 345-3000
roregan@burnslev.com

## CERTIFICATE OF SERVICE

I, Robert J. O'Regan, hereby certify that on this 16th day of May 2016 a copy of the foregoing document was served via the Court's ECF system as follows:

United States Trustee - ORL USTP.Region21.OR.ECF@usdoj.gov

For the U.S. Trustee: Timothy S Laffredi, Esq., timothy.s.laffredi@usdoj.gov

For Creditor Sally R. Gagilini, Esq.: Peter N. Hill, Esq. phill@whmh.com; kmaples@whmh.com; cbunch@whmh.com

For Creditor Ditech Financial LLC: Kevin L Hing, Esq. khing@logs.com

For Creditor Bank of America, N.A.: Connie J. Delisser, Esq. cdelisser@mlg-defaultlaw.com; mlgfl-bk@mlg-defaultlaw.com

I also hereby certify that a copy of the foregoing document was served by first-class mail on May 16, 2016 on the following:

Thomas J. Flannagan, Esq.
MacLean Holloway Doherty Ardiff & Morse
8 Essex Center Drive
Peabody, MA 01960

Andrew B. Migell
11 Timicuan Drive
Ormand Beach, FL 32174

Finance Department County of Volusia
123 W Indiana Ave., Rm 103
Deland, FL 32720

/s/ Robert J. O'Regan
Robert J. O'Regan

4846-5237-8161.1