ORDERED.

**Dated:  September 26, 2018**

_____
Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re | ) |
| | ) |
| ANDREW BRUCE MIGELL, | )   Case No. 6:15-bk-10569-KSJ |
| | )   Chapter 7 |
| Debtor. | ) |
| | ) |

**MEMORANDUM OPINION**
**PARTIALLY GRANTING DEBTOR'S MOTION FOR SANCTIONS**

A long history of litigation precedes the Debtor's, Andrew Migell, most recent motion[1] seeking sanctions against a lawyer in Massachusetts, Robert J. O'Regan, for trying to collect a judgment debt against the Debtor's exempt homestead property[2] in violation of the automatic stay under § 362 of the Bankruptcy Code.[3] Mr. O'Regan opposes this motion.[4] The Court partially will grant the motion finding Mr. O'Regan violated the automatic stay by seeking to impose a constructive trust against the Debtor's exempt homestead but defer imposing monetary sanctions, provided Mr. O'Regan _immediately_ stops seeking to collect the judgment debt against the Debtor's home insulated from claims of creditors.

---

[1] Doc. No. 301 ("Motion for Contempt and Sanctions for Violation of the Automatic Stay."). All Doc. No. citations refer to pleadings filed in Case No. 6:15-bk-10569-KSJ unless otherwise noted. Documents cited in the other cases will be cited like this: "Doc. No. ___ in 6:14-bk-13714-KSJ" or "Doc. No. ___ in 6:16-ap-00118-KSJ."
[2] The Debtor's home is located at 11 Timicuan Drive, Ormond Beach, Florida.
[3] All references to the Bankruptcy Code refer to 11 U.S.C. §§ 101, _et seq._
[4] Doc. No. 310. A trial was held on the dispute on June 8, 2018.

1

**Litigation in Massachusetts**

Mr. O'Regan represents the Debtor's mother, Mrs. Migell, as her Guardian and Conservator in several cases against the Debtor before the Probate and Family Court of Massachusetts, Middlesex Division (the "Probate Court"). As recited in an earlier Opinion,[5] the Probate Court has found the Debtor culpable for stealing money rightfully belonging to Mrs. Migell and has entered a judgment exceeding $176,000 (the "Probate Judgment") against him and his wife, Kai Sun Migell, to recover these losses arising from a proven breach of the Debtor's fiduciary duties. Much of this defalcation relates to the Debtor's improper transfers of real property located in Florida, Massachusetts, and New Hampshire that formerly belonged to his now deceased father.

None of these shady transfers, however, directly relate to the Debtor's home in Ormond Beach.[6] Debtor's father never owned the house.[7] Debtor purchased the home on May 23, 2005, five years before any litigation started in Massachusetts.[8] No party has ever presented *any* evidence that connects the Debtor's purchase of his home with the ongoing litigation in Massachusetts.

**Bankruptcy Cases**

Debtor unquestionably has obstructed Mr. O'Regan's efforts to collect upon the Probate Judgment. Mr. Migell has filed two Chapter 11 bankruptcy petitions one year apart—on December 22, 2014,[9] and on December 22, 2015.[10] Debtor failed to confirm a plan in either Chapter 11 case.[11]

---

[5] Doc. No. 270, p. 3 ("Memorandum Opinion Overruling Creditor's Amended Objection to Debtor's Claim Exemption in Florida Homestead"), entered on July 31, 2017.
[6] *See id.*
[7] *Id.*
[8] *Id.*
[9] Doc. No. 1 in Case No. 6:14-bk-13714-KSJ.
[10] Doc. No. 1.
[11] *See* Case Nos. 6:14-bk-13714-KSJ and 6:15-bk-10569-KSJ.

The first case was dismissed with his consent and agreement to allow Mr. O'Regan to liquidate the non-homestead real property before the Probate Court.[12]

The second case was filed to interfere with Mr. O'Regan's liquidation efforts. The Chapter 11 case was converted to a Chapter 7 case over his opposition.[13] A Chapter 7 Trustee is now working with Mr. O'Regan to help liquidate assets to pay creditors, including Mrs. Migell.[14] Two state court judgments are deemed non-dischargeable under § 523(a)(2), (4), and (6) of the Bankruptcy Code.[15] Debtor, however, has proven that his Florida home is not entwined with the fraud involved in his late father's estate and is not subject to administration or liquidation by the Probate Court or the Bankruptcy Court.[16]

## Modification of the Automatic Stay

Recognizing that the Debtor consented in his first bankruptcy case to Mr. O'Regan's sale of the fraudulently transferred real property[17] and because Mrs. Migell's claim will survive this bankruptcy case and she is an elderly woman needing costly medical care,[18] the Court has twice modified the automatic stay to allow Mr. O'Regan, now working with the Chapter 7 Bankruptcy Trustee, to continue his efforts in the Probate Court.[19] Mr. O'Regan was given authority to remove the Debtor as a trustee and seek appointment of a successor trustee before the Probate Court.[20] Later, I modified the stay to allow Mr. O'Regan and the Probate Court to continue its normal administration of the actions pending in Massachusetts including entering the Probate Judgment.[21]

---

[12] Doc. Nos. 93, 94, 97 ("Motion to Approve Compromise of Controversy or Settlement Agreement," "Order Granting Motion to Approve Compromise or Settlement," and "Order Dismissing Case with Injunction," respectively) in Case No. 6:14-bk-13714-KSJ.
[13] Doc. No. 138.
[14] Doc. No. 141.
[15] Doc. No. 42 in 6:16-ap-00118-KSJ.
[16] *See* Doc. No. 270.
[17] Doc. No. 87 in Case No. 6:14-bk-13714-KSJ.
[18] Doc. No. 42 in 6:16-ap-00118-KSJ.
[19] Doc. Nos. 139, 195.
[20] Doc. No. 139. The order was entered on August 19, 2016.
[21] Doc. No. 195. The order was entered on November 14, 2016.

Mr. O'Regan and the Probate Court were allowed and encouraged to marshal assets relating to the estates and trusts involving the Debtor's father and to liquidate these assets. The orders modifying the automatic stay contained one significant exception. Paragraph three of the Order provides any further collection of the Probate Judgment was "subject to the automatic stay unless otherwise ordered by this Court."[22] The stay remained in full force and effect to limit Mr. O'Regan and the Probate Court from attempting to collect the Probate Judgment against the Debtor.

During the time the Court was writing the opinion finding the Debtor's Florida home exempt from creditor claims,[23] Mr. O'Regan filed an emergency motion seeking clarification on whether certain actions taken by the Probate Court violated the remaining vestiges of the automatic stay.[24] Specifically, on May 22, 2017, the Probate Court conducted a hearing on whether the Debtor and his non-debtor spouse, Kai Sun Migell, were in contempt of court for failing to turn over their Florida home to the Probate Court. The Probate Court, *acting on pleadings filed by Mr. O'Regan*,[25] was attempting to force the Debtor to waive his homestead exemption or else be held in contempt of court for failing to pay the Probate Judgment. Mr. O'Regan then rightly asked me for clarification whether this attempt to seize the Debtor's Florida home violated the automatic stay.

Shortly thereafter, the written opinion confirming the Debtor's home in Florida is protected from claims of all creditors was entered.[26] And the Court entered an order clarifying that the automatic stay protected the Debtor from any attempt to collect the Probate Judgment against his

---

[22] Doc. No. 195, p. 4.
[23] Doc. No. 270. The trial on the Creditor's Amended Objection to Claim Exemption in Florida Homestead was held on April 13, 2017. The opinion was issued on July 31, 2017.
[24] Doc. No. 252.
[25] Doc. No. 336, Debtor's Exhs. 1-2.
[26] Doc. No. 270.

exempt homestead.[27] This order reiterated that the Debtor's Florida home is exempt property protected by Article X of the Florida Constitution from claims of creditors, including the claims of Mrs. Migell; that the automatic stay remained "in full force and effect;" that any order by the Probate Court "directing the Debtor to waive his protection the homestead is void and unenforceable;" and that creditors cannot seek, directly or indirectly, to collect any judgment against the homestead.[28] No party appealed this ruling, which is final.

So, as of July 28, 2017, it is crystal clear that *any* action to force the Debtor to relinquish his protected interest in his Florida house or to collect the Probate Judgment by forcing him to waive his exemption in the home violates the automatic stay.

### Mr. O'Regan's Actions Violate the Automatic Stay

In the motion, the Debtor contends Mr. O'Regan has continued his efforts to collect the Probate Judgment against the home.[29] Section 362(k)(1) allows bankruptcy courts to impose sanctions when an individual is injured by a "willful violation of the stay."[30] Willful violation happens when a party "(1) knew the automatic stay was invoked and (2) intended the actions which violated the stay."[31]

Similarly, a party seeking civil contempt sanctions must establish by clear and convincing evidence: "(1) the allegedly violated order was valid and lawful; (2) the order was clear, definite and unambiguous and (3) the alleged violator had the ability to comply with the order."[32] The burden of production shifts to the contemnor to justify non-compliance with the order once the party seeking civil contempt proves by clear and convincing evidence the contemnor has violated

---

[27] Doc. No. 267 ("Order Granting Emergency Motion by Creditor Alice E. Migell for Clarification of Order Granting Relief from Automatic Stay for Authority of State Court to Proceed Regarding Real Estate Over Which Debtor Claims Exemption"). The order was entered on July 28, 2017.
[28] *Id.*
[29] Doc. No. 301.
[30] 11 U.S.C. § 362.
[31] *In re Robinson*, No. 6:11-BK-18517-ABB, 2012 WL 1658927, at *2 (Bankr. M.D. Fla. May 10, 2012) (quoting *Jove Eng'g, Inc. v. I.R.S.* (*In re Jove Eng'g, Inc.*), 92 F.3d 1539, 1545 (11th Cir. 1996)); *see also Perry v. City of Birmingham* (*In re Perry*), 521 B.R. 370 (Bankr. N.D. Ala. 2014); *Spinner v. Cash In A Hurry, LLC* (*In re Spinner*), 398 B.R. 84, 94 (Bankr. N.D. Ga. 2008).
[32] *McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000).

a court order.[33] Sanctions for civil contempt must either be compensatory or designed to coerce compliance.[34]

Mr. O'Regan continued his efforts to seize the homestead *after* this Court issued a memorandum opinion finding the homestead was exempt under Florida law. Hearings before the Probate Court on Mr. O'Regan's motion to impose a constructive trust on the homestead were continued multiple times for approximately a year because Mr. O'Regan did not withdraw it.[35] Debtor's attorney in Massachusetts had to continue to defend the constructive trust dispute in the Probate Court and even filed a motion urging the Probate Court to defer the homestead issue to the Bankruptcy Court.[36] The Court acknowledges that the Probate Court repeatedly continued the hearing on Mr. O'Regan's motion and that he did not take any other actions. But, no hearing would have occurred if Mr. O'Regan would have promptly withdrawn his motion. The evidentiary hearing before this Court on the instant Motion for Sanctions occurred on June 8, 2018, and Mr. O'Regan still had not withdrawn his pleadings seeking to impose a lien on the Debtor's exempt Florida home.

In his Opposition to the Debtor's Motion for Contempt and Sanctions, Mr. O' Regan argues Florida law does not protect property acquired with embezzled money.[37] He also states the Probate Court may determine the Debtor's ownership of the homestead as long as Mr. O'Regan does not try to collect the judgment against the home.[38] Mr. O'Regan's reading of this Court's orders is troubling. The Memorandum Opinion issued in July 2017 was clear that the automatic stay was in full effect, that the overwhelming weight of the evidence supported a conclusion the Debtor lived

---

[33] *Steffen v. Gray, Harris & Robinson, P.A*., 283 F. Supp. 2d 1272 (Bankr. M.D. Fla. 2003).
[34] *In re Rhodes*, 563 B.R. 380, 387 (Bankr. M.D. Fla. 2017) (citing *In re Ocean Warrior*, 835 F.3d 1310, 1317 (11th Cir. 2016)).
[35] Doc. No. 336-37, Debtor's Exh. 4; Exh. 5; Exh. 14, p. 46-; Exh. 15, p. 5; Testimony of M. Longo 23:22-25, 24:1-25, 25:1-3, 43:8-13, 45:20-25, 46:1-25, 47:1-25, 48:1-25, 58:3-25, 59:1-6; Testimony of R. O'Regan 135-139.
[36] Doc. No. 337, Debtor's Exh. 7.
[37] Doc. No. 310, p. 3.
[38] *Id.* at 3-4.

6

in his homestead since 2011, and that the homestead property was *not* bought with stolen funds.[39] Mr. O'Regan had an opportunity to show the Debtor's home was purchased with ill-gotten funds. But he failed. Mr. O'Regan now cannot circumvent this Court's orders that the Debtor's home is exempt because the ruling is unfavorable to Mrs. Migell. He cannot get a second opinion from the Probate Court.

Mr. O'Regan also cannot go after Kai Sun Migell's, the non-debtor defendant, portion of the homestead. Tenancy by the entireties ("TBE"), as defined by Florida law, is a unique form of property ownership only married couples may enjoy.[40] Both real and personal property can be owned TBE.[41] The Florida Supreme Court announced a presumption in favor of TBE for married couples that jointly own property (the "Beal Bank Presumption").[42] Marital homes in Florida are presumed to be owned TBE.[43] Under this legal fiction, both spouses own 100% of the home.[44] Mr. O'Regan did not present sufficient evidence throughout this case to rebut the presumption that the homestead is owed TBE by the Debtor and his wife. Therefore, any attempt to pursue collection against Mrs. Migell is an action against Mr. Migell's homestead interest and is prohibited.

---

[39] Fla. Const. art. X, § 4 ("There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house") (emphasis added); *see also Willis v. Red Reef, Inc.*, 921 So. 2d 681 (Fla. Dist. Ct. App. 2006) (Judgment creditor could not collect on homestead when property was not purchased with "fruits of fraudulent activity.")

[40] *Beal Bank, SSB v. Almand & Assocs.*, 780 So. 2d 45, 52 (Fla. 2001).

[41] *Id.* at 52-54 (Six unities must exist simultaneously for property to be owned as TBE in Florida: (1) unity of possession (joint ownership and control); (2) unity of interest (the interests must be identical); (3) unity of title (the interest must have originated in the same instrument); (4) unity of time (the interests must have commenced simultaneously); (5) survivorship; and (6) unity of marriage (the parties must be married at the time the property became titled in their joint names).

[42] *Beal Bank*, 780 So.2d at 53-55; *see also* Fla. Stat. § 655.79 (Florida legislature codified the judicially established *Beal Bank* Presumption, and the statute is consistent with *Beal Bank.)*

[43] *In re Mitchell*, 344 B.R. 171, 174 (Bankr. M.D. Fla. 2006) (internal citations omitted) ("The presumption that the husband and wife acquired the property as tenants by the entireties 'arises from taking title in the spouses' joint names.'")).

[44] *Jensen v. Montemoino (In re Montemoino)*, 491 B.R. 580, 584 (Bankr. M.D. Fla. 2012) (when property is owned TBE, each spouse "owns an undivided interest in the whole") (citing *In re Robedee*, 367 B.R. 901, 908 (Bankr. S.D. Fla. 2007)).

The Court finds Mr. O'Regan violated the stay by failing to withdraw his pleadings seeking to seize or place a lien on the homestead.[45] However, given the underlying nature of the relationship and litigation between the Debtor and Mrs. Migell and the proven theft by the Debtor of monies that should pay for his mother's care, the Court will use her discretion and defer imposing any monetary sanctions at this time provided Mr. O'Regan *immediately* stops seeking to collect the judgment debt against the Debtor's homestead. As the Eleventh Circuit has stated, "section 105(a) is, on its face, a discretionary tool for the courts."[46]

Accordingly, it is

**ORDERED:**

1. Debtor's Motion for Sanctions (Doc. No. 301) is **PARTIALLY GRANTED.**

2. The Order Overruling the Creditor's Amended Objection to Debtor's Claimed Exemption in Florida Homestead (Doc. No. 270) is **FINAL**.

3. This Court reserves the right to impose sanctions on Mr. O'Regan if he does not withdraw his pleadings disputing the status of the homestead and as long as he immediately ceases to take any action now or in the future to collect the Probate Judgment against the Debtor's home.

###

The Clerk is directed to serve a copy of this order on all interested parties.

.

---

[45] Courts have found that failure to act can be a violation of the automatic stay. *See, e.g., In re Braught*, 307 B.R. 399, 403 (Bankr. S.D.N.Y. 2004) ("a creditor has an affirmative duty to take steps to vacate any judgments signed and entered after the filing of a bankruptcy petition in violation of the automatic stay").

[46] *See John Richards Homes Building Co., L.L.C v Adell (In re Adell)*, 296 F. App'x 837, 839 (11th Cir. 2008) (finding bankruptcy court did not abuse its discretion in denying sanctions even though there was a bad faith finding).