ORDERED.

Dated:  November 28, 2018

Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re                                        )
                                             )
ANDREW B. MIGELL,                            )        Case No. 6:15-bk-10569-KSJ
                                             )        Chapter 7
             Debtor.                         )
_____)

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case came before the Court for trial on October 31, 2018 and November 2, 2018, to consider the Chapter 7 Trustee's Motion to Sell Real Property Free and Clear of Liens,[1] the Chapter 7 Trustee's Motion to Reject Unexpired Leases and/or Executory Contracts,[2] and the Debtor's Objections to the Motions.[3] After considering witness testimony, admitted evidence, and the arguments of the parties, and consistent with the findings of fact and conclusions of law stated orally and recorded in open court under Federal Rule of Bankruptcy Procedure 7052, the Court makes the following ruling and retains jurisdiction to issue supplemental written findings of fact and conclusions of law to further explain the oral ruling.[4]

---

[1] Doc. No. 370.
[2] Doc. No. 366.
[3] Doc. Nos. 385, 386.
[4] *Educational Credit Management Corp. v. Mosley (In re Mosley)*, 494 F.3d 1320, 1328 (11th Cir. 2007).

1.      The property that is the subject of these proceedings is 147 Thresher Road, Candia, New Hampshire 03034 (the "Property").

2.      Bruce A. Migell[5] was the Debtor's father and is deceased.

3.      Alice Migell is the Debtor's mother and Bruce's widow.

4.      Dorothy M. Jacobsen was the Debtor's aunt, Bruce's sister.

5.      Kai Sun is the Debtor's non-filing spouse.

6.      On August 25, 1959, Bruce A. Migell and Dorothy M. Jacobsen purchased the Property.[6]

7.      The Property was transferred into the Mariposa Trust, dated January 14, 1994 ("Mariposa Trust"), and the Property was the only asset of the Mariposa Trust. The Mariposa Trust was recorded on August 9, 1994, in the Registry of Deeds for Rockingham County, New Hampshire (Book 3065, Page 2524).[7]

8.      During his life, Bruce acquired properties in New Hampshire, Massachusetts, and Florida. Bruce devised an estate plan that provided his personal property would be devised to Alice upon his death with the rest and residue of his estate, including the real properties, to pass into the Bruce A. Migell Family Revocable Trust to support Alice.[8]

9.      On December 9, 2005, Bruce executed an Appointment of Successor Trustee for the Mariposa Trust, which was also signed by Debtor, in which Bruce appointed the Debtor as successor trustee of the Mariposa Trust and affirmed that Bruce was the sole remaining beneficiary of the Mariposa Trust.[9]

---

[5] This case involves multiple members of the Migell family. To avoid confusion, the Court will introduce the Parties with first and last names and then subsequently refer to each person by first name only.
[6] Trustee's Exh. 1.
[7] Trustee's Exh. 3.
[8] Trustee's Exh. 5, ¶¶ 59-66 (section titled "Rationale").
[9] Trustee's Exh. 4, ¶¶ 4-5.

10.     Bruce died on January 21, 2006, a few days after he appointed his son, the Debtor, successor trustee for the Mariposa Trust, and Alice and Bruce were married when Bruce died.

11.     The Court finds Bruce owned 100% of the beneficial interest in the Mariposa Trust at the time of his death. Bruce's interest in the Mariposa Trust, and therefore his interest in the Property, was an asset of his probate estate when he died.

12.     Robert O'Regan, a Masschusetts lawyer, has acted as the court appointed Conservator and Guardian for Alice since 2008. Mr. O'Regan became Alice's permanent guardian in 2010.

13.     Alice suffers from many physical and mental health issues that have left her incapacitated and requires 24-hour medical care.[10]

14.     After his appointment as Conservator and Guardian, Mr. O'Regan discovered that certain assets Bruce acquired during his lifetime were transferred by the Debtor and Kai Sun out of Bruce's estate prior to his death.

15.     Mr. O'Regan testified he instituted lawsuits in Massachusetts on behalf of Alice against the Debtor and Kai Sun to recover the assets that the Debtor and Kai Sun transferred from Bruce and Alice.

16.     On January 10, 2013, the Probate and Family Court for Middlesex County, Massachusetts (the "Probate Court") entered a judgment for damages against Debtor and Kai Sun and a permanent injunction prohibiting the Debtor and Kai Sun from conveying any real property or bank accounts held in their names until the judgment is satisfied.[11]

---

[10] Trustee's Exh. 5, ¶¶ 6-30.
[11] Trustee's Exh. 16.

17.     On March 4, 2013, the Probate Court entered its Relevant Procedural History, Findings of Fact, Conclusions of Law, and Rationale in support of its Judgment.[12] The Court called the Debtor's actions a "ruthless campaign to totally and utterly deprive his elderly, ailing, and recently widowed mother of her entire estate" while engaging in "a willful and continuous pattern of some of the most shockingly obstructionist behavior ever seen by [the Probate Court]."[13]

18.     After trials in other related equity lawsuits, on June 1, 2015, the Probate Court entered its Reinstated Judgment and its Reinstated Findings of Fact, Conclusions of Law, and Rationale in favor of Mr. O'Regan and against the Debtor and Kai Sun.[14] The Probate Court found that Bruce died with a substantial estate for himself and his widow, Alice, and the Debtor and Kai Sun fraudulently caused the estate to be transferred to them.[15]

19.     The Probate Court found the Debtor intentionally interfered with Alice's interests in her marital estate by diverting Bruce's properties outside of his Probate Estate. The Probate Court noted that "[b]ut for [Debtor's] fraud and undue influence on [Bruce], [Alice] would have received the benefit of the subject properties."[16]

20.     The Reinstated Judgment required the Debtor and Kai Sun to return multiple properties, and the proceeds from the sales of certain properties, to Mr. O'Regan for Alice's benefit.[17] The Probate Court removed the Debtor as trustee of any trust in which Alice was a beneficiary "as a result of his serious breach of trust and his failure to administer the trusts effectively."[18]

---

[12] Trustee's Exh. 18.
[13] *Id.* (section titled "Rationale").
[14] Trustee's Exhs. 5 and 6.
[15] *Id.*
[16] Trustee's Exh. 5 (section titled "Rationale").
[17] Trustee's Exh. 6.
[18] *Id.* at ¶ 13.

21.     Mr. O'Regan obtained multiple other judgments and awards against the Debtor for damages and attorneys' fees and costs, including attorneys' fees and costs incurred because of the Debtor's many unsuccessful and dilatory appeals of the Probate Court's rulings.[19]

22.     Mr. O'Regan testified that litigation with the Debtor is time consuming and expensive because of Debtor's abusive litigation tactics.[20]

23.     The Probate Court described litigation involving the Debtor and Kai Sun:

[Debtor] and Kai Sun have not only behaved deplorably toward Alice, they have also engaged in a willful and continuous pattern of some of the most shockingly obstructionist behavior ever seen by this Court. [Debtor and Kai Sun] have attempted to thwart the efforts of [Mr. O'Regan] at every turn, from disguising Alice's assets and making them difficult to identify and reach, to avoiding service of process, ignoring discovery requests, flagrantly disobeying countless court orders, and commencing bad faith litigation.[21]

24.     Mr. O'Regan filed Proof of Claim No. 8-3 on behalf of Alice in this Chapter 7 case. The Addendum attached to Proof of Claim No. 8-3 identifies the amounts owed to Alice by the Debtor, given the awards and judgments entered against the Debtor in Alice's favor.[22]

25.     Alice's Proof of Claim represents approximately 87% of the unsecured claims in the Debtor's case.[23]

26.     On June 17, 2015, the Probate Court appointed W. Sanford Durland, III, Esq., as personal representative of Bruce's probate estate.[24] Mr. Durland testified he continues to serve in that role.

27.     Mr. Durland testified he has attempted to liquidate the assets of Bruce's probate estate to benefit Alice.

---

[19] Trustee's Exhs. 15-25.
[20] *See also* Trustee's Exhs. 24-31 (dockets from various court proceedings between Mr. O'Regan and the Debtor).
[21] Trustee's Exh. 18 (section titled "Rationale").
[22] Trustee's Exh. 14.
[23] Trustee's Exh. 60 (the docket report shows the claims filed in the case). The Chapter 7 Trustee testified that Alice's claim represents 87% of the unsecured claims in the Debtor's case.
[24] Trustee's Exh. 7.

28.     On November 16, 2016, Mr. Durland, in his capacity as personal representative of Bruce's probate estate, appointed himself as the successor trustee of the Mariposa Trust.[25]

29.     Mr. Durland's appointment as successor trustee of the Mariposa Trust was proper, because at the time of his death, Bruce was the sole beneficiary of the Mariposa Trust.[26]

30.     Mr. Durland testified he "stepped into the shoes" of Bruce as the personal representative of Bruce's estate and acted as the sole beneficiary of the Mariposa Trust, allowing him to appoint himself a successor trustee.

31.     Mr. Durland testified he continues to serve as trustee of the Mariposa Trust.

32.     On November 17, 2016, Mr. Durland provided notice of his appointment as successor trustee to the Mariposa Trust to the Debtor.[27]

33.     On May 5, 2017, the Debtor filed a sworn Removal of Successor Trustee that the Debtor purported to remove Mr. Durland as the successor trustee of the Mariposa Trust.[28]

34.     In the sworn Removal of Successor Trustee, the Debtor reaffirmed that "[p]rior to his death on January 21, 2006, Bruce A. Migell was the sole remaining beneficiary of the Mariposa Trust and appointed me as Trustee." Debtor also stated that "[p]rior to his death and subsequent to appointment as successor Trustee, Bruce A. Migell transferred all of his beneficial interest to me" and that "[a]s a result, Bruce A. Migell had no beneficial interest in the [Mariposa] Trust upon his death."[29]

35.     The testimony showed the Debtor's filing of the Removal of the Successor Trustee prevented Mr. O'Regan and Mr. Durland from selling the Property without first suing the Debtor

---

[25] Trustee's Exh. 8.
[26] Trustee's Exh. 4, ¶¶ 4.
[27] Trustee's Exh. 9.
[28] Trustee's Exh. 11.
[29] *Id.* at ¶¶ 5, 7-8.

in Massachusetts and/or New Hampshire to invalidate the Debtor's Removal of Successor Trustee and to obtain a judgment confirming that the Property should vest with Bruce's Probate Estate for Alice's benefit.

36.    To avoid incurring the attorneys' fees and costs to file a lawsuit to take care of the Removal of Successor Trustee, Mr. Durland and Mr. O'Regan testified they contacted the Chapter 7 Trustee to explore whether the Chapter 7 Trustee would liquidate the Property for Alice's benefit.

37.    The Chapter 7 Trustee testified he agreed to accept a quit claim deed for the Property and seek to sell the Property.

38.    Mr. Durland and Mr. O'Regan testified that each believed it was in Alice's best interests for the Trustee to liquidate the Property in the Debtor's bankruptcy case. Mr. O'Regan acknowledged that he understood the proceeds of the sale of the Property would be paid to the Debtor's bankruptcy estate. Mr. O'Regan understood the proceeds would be available to pay administrative costs of the Debtor's estate, the Trustee's commission, and the other unsecured creditors.

39.    Mr. Durland and Mr. O'Regan testified that despite those costs, the benefit of a timely distribution from the bankruptcy estate outweighed the costs of litigating with the Debtor in state court, given his history of relying on protracted, abusive litigation tactics to avoid the judicial rulings.

40.    Mr. Durland's and Mr. O'Regan's testimony is bolstered by the findings of the Probate Court that described litigating with the Debtor and Kai Sun as "obstructionist" due to their "flagrantly ignoring discovery requests, flagrantly disobeying countless court orders, and commencing bad faith litigation."[30]

---

[30] Trustee's Exh. 18 (section titled "Rationale").

41.     On January 11, 2018, the Probate Court granted Mr. Durland authority to transfer the Property to the Chapter 7 Trustee.[31]

42.     On June 19, 2018, Mr. Durland executed and delivered to the Chapter 7 Trustee a quit claim deed to the Property.[32]

43.     The Chapter 7 Trustee testified he accepted the deed and recorded the deed in the Public Records of Rockingham County, New Hampshire on July 5, 2018.

44.     The Court finds title to the Property is now vested with the Chapter 7 Trustee.

45.     On July 31, 2018, this Court entered its Order Approving the Chapter 7 Trustee's Application to Employ/Retain William Paul Henderson, and Laura Batista as Realtors to market the Property on behalf the Chapter 7 Trustee.[33]

46.     The Chapter 7 Trustee listed the Property initially for sale at $335,000. The Trustee testified there was significant interest in the Property, and the Trustee received eight offers from multiple parties.

47.     The Trustee testified Ronald Severino, a neighboring land owner, submitted the highest offer to purchase the Property for $430,000 in cash with no contingencies. The Trustee accepted Mr. Severino's offer.

48.     On August 22, 2018, the Chapter 7 Trustee and Mr. Severino signed a Purchase and Sales Agreement for Mr. Severino to purchase the Property for $430,000. The closing date was set for October 19, 2018.[34]

---

[31] Trustee's Exh. 12.
[32] Trustee's Exh. 13.
[33] Doc. No. 364.
[34] Trustee's Exh. 32.

49.     The Trustee then sought court approval of the sale of the Property to Mr. Severino,[35] and the Debtor opposed the sale.[36]

50.     The Trustee also sought to reject any unexpired leases and executory contracts on the Property so the Trustee could transfer the Property with clear title,[37] and the Debtor opposed that Motion.[38]

51.     Debtor has filed two voluntary Chapter 11 proceedings in this Court.

52.     Debtor's first Chapter 11 case was filed on December 22, 2014, and dismissed on July 27, 2015 (the "First Case").[39]

53.     This case was then filed on December 22, 2015 (the "Second Case").[40]

54.     Debtor under penalty of perjury swore he owned the Property and listed it in both of his bankruptcy cases:

    a.  **First Case**

        i.  Case Management Summary: Debtor notes that his income is "derived from rental income properties Debtor owns." Debtor then identifies the Property in the list of properties that the Debtor owns;[41]

        ii.  Schedule A: Debtor identifies the Property as held in the Mariposa Trust with Debtor as the sole beneficiary;[42] and

        iii.  Amendment to Schedule A: Debtor identifies the Property as held in the Mariposa Trust with Debtor as the sole beneficiary.[43]

---

[35] Trustee's Exh. 36.
[36] Trustee's Exh. 37. The closing date has been moved multiple times to deal with the issues raised at trial.
[37] Trustee's Exh. 38.
[38] Trustee's Exh. 39.
[39] Case No. 6:14-bk-13714-KSJ.
[40] Doc. No. 1.
[41] Trustee's Exh. 44
[42] Trustee's Exh. 45.
[43] Trustee's Exh. 46.

b. **Second Case**

    i. Schedule A/B: Debtor schedules the Property as a property he owns on Schedule A and checks the box that indicates that only the Debtor has an interest in the Property. On Page 15, the Debtor includes additional notes about the properties on Schedule A/B. Debtor acknowledges that Mr. O'Regan challenged the Debtor's claim of ownership to "some of the property listed by [the Debtor] in Schedule A/B" and that the "Debtor disputes claims made by Mr. O'Regan and reaffirms his statements in Schedule A/B";[44]

    ii. First Amended Schedule A/B: The Property is again scheduled as an asset of the Debtor with the reaffirmation of the Debtor's claim of ownership in the notes section;[45]

    iii. Second Amended Schedule A/B: The Property is again scheduled as an asset of the Debtor with the reaffirmation of the Debtor's claim of ownership in the notes section;[46]

55. On August 19, 2016, the Court converted the Second Case to Chapter 7.[47]

56. After the case was converted to Chapter 7 and a trustee was appointed, the Debtor then attempted to revise his schedules to remove any claim of ownership to the Property.[48]

---

[44] Trustee's Exh. 50.
[45] Trustee's Exh. 51.
[46] Trustee's Exh. 52.
[47] Trustee's Exh. 53.
[48] Trustee's Exhs. 55 and 56.

57.     In response to a subpoena issued by the Chapter 7 Trustee, the Debtor produced a Land Lease Agreement ("Lease"), dated August 1, 2010. The Landlord is identified as "Andrew Migell, Trustee, Mariposa Trust," and the Tenant is identified as Leo B. Lhu ("Tenant").[49]

58.     Debtor testified that the Lease was the only outstanding lease on the Property.

59.     Promptly upon receiving a copy of the Lease, the Chapter 7 Trustee mailed the Tenant a copy of the Trustee's Motion to Sell, Motion to Reject Leases, and the Trial Order at the notice address provided for the Tenant in the Lease. Trustee filed a Certificate of Service with the Court.[50]

60.     The Trustee testified the documents mailed to the Tenant at the notice address identified in the Lease were not returned to the Trustee by the postal service. The Court finds the Tenant received actual and timely notice of these contested matters.

61.     Despite receiving notice of these proceedings, the Tenant served no response and filed no objection to the Trustee's Motion to Reject Leases.

62.     The Trustee testified that he has not assumed the Lease, and there is no evidence to the contrary.

63.     Debtor did not identify the Tenant or the Lease on Schedule G in the Debtor's bankruptcy filings and only grudgingly provided a copy of the Lease to the Chapter 7 Trustee.

64.     The Court concludes Bruce was the sole beneficiary of the Mariposa Trust at the time of his death, which was acknowledged in sworn statements by both Bruce and the Debtor. As the sole beneficiary of the Mariposa Trust at the time of his death, Bruce's interest in the Mariposa Trust (namely, the Property), became assets of Bruce's probate estate.

65.     Mr. Durland was entitled to administer and liquidate Bruce's probate estate.

[49] Trustee's Exh. 42.
[50] Trustee's Exh. 40.

66.     After the Debtor received notice that Mr. Durland intended to liquidate the Property for Alice's benefit, the Debtor recorded his self-authored Removal of Successor Trustee in the Public Records of Rockingham County, New Hampshire.

67.     The Court finds that no court authorized the Debtor to record the Removal of Successor Trustee and it was recorded to cloud title to the Property and to prevent Mr. Durland for liquidating the Property for Alice's benefit.

68.     Debtor maintains that Bruce transferred all beneficial interest in the Mariposa Trust, including the Property, to the Debtor prior to Bruce's death.

69.     Debtor relies only upon his self-authored Removal of Successor Trustee to support his claim that Bruce transferred all beneficial interest of the Mariposa Trust to Debtor upon Bruce's death.

70.     Debtor provided no evidence to support his position, and the Court notes that the Debtor's bankruptcy schedules and documents contradict that claim.

71.     The Court finds Debtor's claim to be wholly without merit and unsupported by any evidence in the record.

72.     The Court finds that the testimony provided by the Debtor incredible.

73.     The Court rejects the Debtor's testimony and argument and gives his testimony no weight.

74.     Given the conflicting claims to the title to the Property created by the Debtor and the unauthorized Removal of Successor Trustee, Mr. Durland and Mr. O'Regan determined that the most cost-effective and expeditious way for Mr. Durland to administer the Property for Alice's benefit was for Bruce's probate estate to transfer the probate estate's claim to the Property to the

Chapter 7 Trustee and let the Chapter 7 Trustee liquidate the Property through Debtor's bankruptcy estate.

75.    The Court finds Mr. Durland's and Mr. O'Regan's testimony extremely credible and that both have acted in the best interests of Alice.

76.    The Probate Court authorized the transfer of title to the Chapter 7 Trustee, and title to the Property is now vested with the Chapter 7 Trustee.

77.    Even though Mr. Durland and Mr. O'Regan dispute that Bruce transferred any interest in the Mariposa Trust or the Property to the Debtor prior to his death, the outcome of this case would be the same even if the interest had been transferred.

78.    The Court finds that under the scenarios below the Chapter 7 Trustee may liquidate the Property:

> a.    The assets of the Mariposa Trust (the Property) transferred to Bruce's probate estate when he died because Bruce was the sole beneficiary of the Mariposa Trust when he died. Mr. Durland, in his capacity as personal representative, controlled the Property as an asset of Bruce's probate estate. After obtaining authorization from the Probate Court, Mr. Durland transferred the Property to the Chapter 7 Trustee for liquidation. The Property is an asset of the Debtor's bankruptcy estate under § 541(a)(7), and the Chapter 7 Trustee may sell the Property;[51] or

> b.    Debtor has maintained in multiple filings in this Court that the Debtor owns the Property and has the sole beneficial interest to the Property.

---

[51] *Baker v. Iles (Matter of Iles)*, Case No. 15-11786-WHD, 2017 WL 6550494 at *3 (Bankr. N.D. Ga. Dec. 21, 2017); *see also* 11 U.S.C. § 541(a)(7) (defining property of the bankruptcy estate as any interest in property that the estate obtains after the commencement of the case).

And, although the Debtor's testimony is not believable, if that fact is true, then the Property is property of the estate under § 541(a)(1) of the Bankruptcy Code, and the Chapter 7 Trustee could sell the Property as a non-exempt asset of the bankruptcy estate without Mr. Durland's deed. Debtor never claimed the Property exempt.

c.    Further, the Debtor is judicially estopped from now claiming he does not have sole beneficial interest in the Property. "The equitable doctrine of judicial estoppel is intended to 'prevent the perversion of the judicial process' and 'protect [its] integrity ... by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'"[52] The Eleventh Circuit employs a two-part test when applying judicial estoppel. The Court should look to whether (1) a party took a prior inconsistent position, and (2) these inconsistent positions were "calculated to make a mockery of the judicial system."[53] To determine whether a party's inconsistent statements were calculated to make a mockery of the judicial system, the Court should look at all the circumstances and facts of a specific case.[54] The Court finds the Debtor has taken inconsistent positions under oath by previously claiming he had the sole beneficial interest in the Property and now changing his mind due to the "exigencies of the moment." The Court concludes the Debtor's attempted change in property ownership was calculated to make a mockery of the judicial system and prevent the Chapter 7 Trustee from liquidating the Property.

---

[52] *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1180 (11th Cir. 2017).
[53] *Id.* at 1181.
[54] *Id.* at 1185.

79.     The Court finds Ronald Severino is a good-faith purchaser of the Property under 11 U.S.C. § 363(m).

80.     There are two independent bases for the Court to deem the Lease rejected:

a.  The Trustee did not assume the Lease within 60 days from conversion. Therefore, under § 365(d), the Lease was deemed rejected on October 18, 2016.

b.  Even if the Chapter 7 Trustee could not reject the Lease until the Trustee received the quit claim deed to the Property from Mr. Durland, the Chapter 7 Trustee did not assume the Lease within 60 days of the execution of the deed. Therefore, under § 365(d), the Lease was also deemed rejected on August 20, 2018.

81.     The Court must then determine what right to possession, if any, the Tenant has to the Property under § 365(h).

82.     The Chapter 7 Trustee provided the Tenant with adequate notice of these proceedings by mailing a copy of the Chapter 7 Trustee's Motion to Reject Leases to the Tenant at the notice address identified in the Lease.

83.     Tenant failed to object to the Motion to Reject Leases and failed to appear in these proceedings.

84.     The Court finds the Tenant received adequate notice of these proceedings and due process, and the Tenant has waived any claim to a possessory right to the Property. Any right to possession of the Property by the Tenant is terminated immediately.

85.     A separate order consistent with this Findings of Fact and Conclusions of Law will be entered simultaneously.

###

Trustee, Richard B. Webber II, is directed to serve a copy of this Order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of the entry of the Order.